# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Carter v. Carter*, 2012 IL App (1st) 110855

---

| | |
|---|---|
| Appellate Court Caption | TIFFANY L. CARTER, Plaintiff-Appellant, v. AUDREY E. DRESSEN CARTER, as Trustee for the Marital Trust, Defendant-Appellee (Victor J. Chigas, Jr., as Trustee for the GST Separate Trust and the Family Trust, Defendant). |
| District & No. | First District, Second Division<br>Docket No. 1-11-0855 |
| Filed | February 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the marital trust created by plaintiff's father making her stepmother the trustee and sole income beneficiary of the trust and plaintiff the sole remainder beneficiary, the trial court properly granted summary judgment for the stepmother on plaintiff's claims of breach of fiduciary duties and unjust enrichment and seeking punitive damages on the grounds that the stepmother's investment strategy of investing only in municipal bonds benefitted her while damaging plaintiff's interest in the trust's principal, since the trust clearly showed plaintiff's father intended to provide income to the stepmother during her lifetime and that the remainder of the trust would go to plaintiff, two other trusts were created expressly for plaintiff and excluced the stepmother, and the trust further provided the stepmother with the power to generate unlimited income for herself from virtually any investment without a requirement that plaintiff's remainder interest remain at the level existing at the commencement of the trust. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-32669; the Hon. Rita M. Novak, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Katten Muchin Rosenman LLP, of Chicago (Charles Chejfec, Kelli Chase Plotz, and Laura A. Brake, of counsel), for appellant. |
|---|---|
| | Robbins, Salomon & Patt, Ltd., of Chicago (Robert J. Trinnzna and Diana H. Psarras, of counsel), for appellee |

| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Cunningham and Harris concurred in the judgment and opinion. |

## OPINION

¶ 1     This cases arises out of the provisions of the Luther Reynolds Carter, Jr., living trust executed by Luther Reynolds Carter, Jr., now deceased, who was the father of plaintiff, Tiffany L. Carter and the husband of defendant, Audrey E. Dressed Carter, Tiffany's stepmother. The living trust created a marital trust that went into effect upon Luther Carter's death. Audrey is the trustee and sole income beneficiary of the marital trust, and Tiffany is the sole remainder beneficiary. Tiffany filed a complaint against Audrey as trustee of the marital trust, alleging breach of fiduciary duties and unjust enrichment and seeking punitive damages on the grounds that Audrey's strategy of investing only in tax-free municipal bonds benefits Audrey while damaging Tiffany's interest in the trust's principal. Following cross-motions for summary judgment, the trial court entered an order in favor of Audrey. Tiffany now appeals. For the reasons set forth below, we affirm.

¶ 2                          I. BACKGROUND

¶ 3     Luther Reynolds Carter, Jr. (Luther), created the Luther Reynolds Carter, Jr., Living Trust (hereinafter, the Living Trust) in 1993 and subsequently amended it twice during his lifetime, once in 1997 and again in August 2003, shortly before his death. The Living Trust provided for the creation of three trusts: a marital trust, a generation-skipping-tax separate trust, and a family trust (hereinafter the Marital Trust, the GST Separate Trust and the Family Trust, respectively). The Living Trust appointed Audrey as trustee of the Marital Trust. Defendant Victor J. Chagas, Audrey's son from a previous marriage, was named as successor trustee

of the Marital Trust and is the trustee of the GST Separate Trust and the Family Trust.[1] Under the provisions of the Living Trust, Audrey is entitled to "all the income" from the Marital Trust during her lifetime, but is not entitled to any of the principal. Upon Audrey's death, Tiffany will receive the principal of the Marital Trust. Section 11.5 of the Living Trust, describing the Trustee's power to invest, provides as follows:

> "In addition to all powers granted by law, the trustee shall have the following powers, to be exercised in a fiduciary capacity:
>
> * * *
>
> 11.5 **Investing**. To invest in bonds, common or preferred stocks, notes, options, common trust funds, mutual funds, shares of any investment company or trust, or other securities, life insurance, partnership interests, general or limited, limited liability company interests, joint ventures, real estate, or other property of any kind, regardless of diversification and regardless of whether the property would be considered a proper trust investment ***."

¶ 4 Audrey assumed her trusteeship of the Marital Trust upon Luther's death on August 28, 2003. In October 2003, the Marital Trust was funded with $2 million. Since assuming trusteeship of the Marital Trust, Audrey has invested 100% of the trust funds in tax-free municipal bonds, which pay interest over time but do not increase the value of the principal. Tiffany contends that this investment strategy has maximized Audrey's net income at the expense of Tiffany's remainder interest in the Marital Trust, in contravention of the terms of the Living Trust, which is silent as to any priority of beneficial interests, and in violation of Audrey's fiduciary duties as trustee. Tiffany argues that Audrey's self-interested investment strategy has failed to protect the principal of the Marital Trust against inflation, and as a result, she has been damaged because $2 million in 2003 is worth approximately $300,000 less today and, therefore, she will not receive the value of $2 million when Audrey dies. There is no dispute that Audrey is a sophisticated investor, who has a diversified portfolio in her other investments, speaks regularly to her broker, reads articles on investing and confers with her sons who are brokers and with friends who are investors. Therefore, Tiffany contends, Audrey deliberately elected to invest the Marital Trust solely to benefit herself while knowingly harming Tiffany's interest.

¶ 5 Audrey asserts that she has complied with the express terms of the Living Trust, which permits her to invest in "bonds *** or other property of any kind, regardless of diversification." She argues that her decision to invest only in municipal bonds is intended "to provide a good, safe income in a highly fluctuating and problematic marketplace." She asserts that before his death, Luther expressed concerns about the safety of the principal and advised her that municipal bonds were a good investment, and that she has followed an investment strategy aimed at minimizing risk. She states that since 2003, she has continued to reevaluate her investment decisions, discussing her options with her broker, her sons and

---

[1]The GST Separate Trust and the Family Trust, which were funded with approximately $1 million each after Luther's death, are expressly for the benefit of Tiffany and her descendants, to the exclusion of Audrey. Those trusts are not at issue in this case.

her friends, and that she might someday consider equities for the Marital Trust portfolio if the bond market changes.

¶ 6    On July 11, 2008, Tiffany filed a first amended complaint against Audrey in her role as trustee of the Marital Trust and Victor Chagas as trustee for the GST Separate Trust and the Family Trust alleging four breach of fiduciary counts: duty of impartiality (count I), duty of prudent investment (count II); duty to properly manage the trust assets (count III); and duty to preserve trust property (count IV). Tiffany also sought punitive damages for intentional misconduct (count XII), and alleged unjust enrichment (count XIII). In July 2010, Tiffany and Audrey filed cross-motions for summary judgment on the four breach of fiduciary duty counts and Audrey alone filed a motion for summary judgment as to the punitive damages and unjust enrichment counts. On November 23, 2010, following a hearing, the trial court granted summary judgment in favor of Audrey on the four breach of fiduciary duty counts and the punitive damages and unjust enrichment counts.[2] In reaching this decision, the trial judge tried to ascertain Luther's intent for the Marital Trust by looking at his Living Trust and his estate planning as a whole. The court stated:

"So what Luther did–that's Mr. Carter–was he wanted income payments to go to Audrey without any discretionary payments of the corpus and that at the end, at Audrey's death, trust will terminate and the proceeds will be distributed to Tiffany, and I think that this is important because by creating the marital trust if Audrey lives with the trust terminating at her death, Luther's intent was clear: And that was his desire to provide for Audrey during the remainder of her lifetime. And although Tiffany does receive a distribution when the trust fund terminates, this allocation does not appear to be for her benefit, but rather guidance of where the money should go when the trust ceases to exist."

¶ 7    Further, noting that the Living Trust does not require diversification and that bonds were permitted as an investment, the court found:

"[The marital trust was really aimed at a conservative investment strategy that was designed to produce a safe investment where there would be some preservation of the principal, but it did not and does not appear from the overall plan here that his goal was to set this up in any particular way. And I don't think he set it up in a way that requires Audrey to exercise her investment strategy in one way or the other."

¶ 8    The court also cited Audrey's testimony, which it found to be "uncontroverted" that "she is evaluating over the course of time whether or not this investment in municipal bonds is a proper one. She reads the newspapers, the various financial reports, listens to television, talks to her friends and her children, who are stockbrokers, et cetera, et cetera." Therefore, the court found that whether or not Audrey's investment of the Marital Trust solely in municipal bonds "results in inflation *** taking something of a toll on what remains of principal," it "was consistent with [Luther's] intent in establishing the trust" and does not

---

[2]The trial court denied the parties' cross-motions for summary judgment on the claims against defendant Victor J. Chagas, and those claims have been stayed pending the outcome of this appeal.

constitute a breach of fiduciary duty or a violation of the prudent investor rule. Therefore, the circuit court granted Audrey's motion for summary judgment in its entirety and denied Tiffany's motion.

¶ 9 On February 25, 2011, the trial court entered an order under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), finding that there is no just reason for delaying enforcement or appeal of the court's November 23, 2010 order, and this timely appeal followed. Tiffany argues on appeal that the trial court erred in granting summary judgment in favor of Audrey on the breach of fiduciary duty claims because (1) it misinterpreted Luther's intent in creating the Marital Trust when it found that the trust was primarily intended to provide income to Audrey and was to be invested conservatively, and (2) Audrey breached her fiduciary duties of impartiality and prudence and the prudent investor rule by investing solely in municipal bonds, and those duties are not abrogated by a term in the Living Trust that permits investment "regardless of diversification." Further, Tiffany asserts that the trial court erred in granting summary judgment on the unjust enrichment count where Audrey had a portion of her legal fees paid out of separate trusts in which she had no interest. Tiffany asks this court to reverse the trial court's grant of summary judgment, remove Audrey as trustee of the Marital Trust, and remand to the trial court for a damages hearing.

¶ 10 II. ANALYSIS

¶ 11 We review *de novo* a trial court's decision granting summary judgment. *Hartford Fire Insurance Co. v. Everest Indemnity Insurance Co.*, 369 Ill. App. 3d 757, 761 (2006). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). Where, as here, the parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005).

¶ 12 Prior to addressing the merits of this appeal, we must first direct our attention to Audrey's request that we strike or disregard the statement of facts and argument sections of Tiffany's brief, because they fail to comply with the requirements of Illinois Supreme Court Rule 341(h) (eff. Mar. 16, 2007). Specifically, Audrey asserts that Tiffany's statement of facts contains argument and statements that are not supported by citations to the record in violation of Illinois Supreme Court Rule 341(h)(6),[3] and that the argument section of Tiffany's brief contains assertions that are not supported by references to the record on

___

[3]The rule states in pertinent part that in her brief an appellant must include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal ***." Ill. S. Ct. R. 341(h)(6) (eff. Mar. 16, 2007).

appeal in violation of Illinois Supreme Court Rule 341(h)(7).[4] While we acknowledge that where an appellant's brief violates the requirements of our supreme court rules, the "appellate court has the discretion to strike [that] brief and dismiss the appeal" or disregard appellant's arguments (*Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 845 (2001)), " '[w]here violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted.' " *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1101 (2008) (quoting *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 527 (1997)). Although our review of Tiffany's brief reveals that it fails to comply with Rules 341(h)(6) and (h)(7), we conclude that her violations of those rules do not hinder our review of the case, since we have the benefit of the record before us, as well as Audrey's proper citations to the record on appeal. Accordingly, we will not strike Tiffany's brief and instead turn to the merits of this appeal. See *Hurlbert*, 386 Ill. App. 3d at 1101.

¶ 13                                    A. Plain Language of the Living Trust

¶ 14       On appeal, Tiffany contends that the trial court's finding that Audrey did not breach her fiduciary duties by investing solely in municipal bonds was erroneous as a matter of law because it was based on the court's misinterpretation of Luther's intent in creating the Marital Trust. Tiffany asserts that the trial court's findings that Luther created the Marital Trust primarily to provide income for Audrey, that he intended for the Marital Trust to be invested conservatively, and only provided for a distribution to Tiffany as guidance as to where the money should go are not supported by the provisions and the structure of the Living Trust. Tiffany argues that the trial court's misinterpretation of Luther's intent alone is grounds for reversing the grant of summary judgment. Further, Tiffany asserts, even if this court does not reverse based on the trial court's misinterpretation of the Living Trust, it should find that despite language in the trust that permits the trustee to make investment decisions "regardless of diversification," Audrey was prohibited, pursuant to her fiduciary duties of impartiality and prudence and the requirements of the prudent investor rule, from investing solely in municipal bonds.

¶ 15       Audrey argues that the trial court correctly found that pursuant to the plain language of the Living Trust, when viewed in the context of Luther's entire estate planning, Luther intended for the Marital Trust to provide income to Audrey during her lifetime by means of whatever investments she deemed appropriate and that the language providing for distribution to Tiffany upon Audrey's death was included merely for guidance as to where the money should ultimately go. Further, Audrey argues that there is no support in Illinois law for finding that the prudent investor rule imposes duties upon a trustee that contradict the express terms of the trust agreement.

¶ 16       A court's primary concern in interpreting a trust instrument is to discover the intent of

---

[4]The rule states in pertinent part that in her brief an appellant shall include an "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

the grantor, which the court will effectuate if it is not contrary to law or public policy. *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574 (2009). In determining that intent the court must first consider the plain and ordinary meaning of the words used and must consider the entire document. *Id.* Where the trust contains language that is unambiguous and clear, the intent must be ascertained from that language; extrinsic evidence may be admitted to aid the interpretation only if the document is ambiguous. *Brown v. Ryan*, 338 Ill. App. 3d 864, 871 (2003). We review the trial court's construction of the trust instrument *de novo. Id.*

¶ 17     Tiffany asserts that Luther had three goals in creating the Marital Trust, none of which has priority of importance: (1) to enjoy federal estate tax benefits; (2) to provide income to Audrey during her lifetime; and (3) to provide a significant inheritance to Tiffany after Audrey's death. Tiffany contends that nothing in the plain language of the Living Trust supports the trial court's finding that the "primary" purpose of the Marital Trust was to provide income for Audrey and that, indeed, if Luther intended to provide exclusively for Audrey, he would have given her access to the principal, which he expressly did not. Tiffany asserts that Luther created the Marital Trust in order to maintain the marital deduction to the estate tax, under section 2056(b)(1) of the Internal Revenue Code (I.R.C. § 2056(b)(1) (2006)), which allowed him to pass his property to Audrey tax-free while directing the ultimate distribution of all principal to Tiffany. Further, Tiffany asserts that the trial court erred in finding that her remainder interest, which she will receive upon Audrey's death, "does not appear to be for her benefit but rather for guidance of where the money should go when the trust ceases to exist." Tiffany contends that this interpretation would mean that no remainder beneficiary would have an interest on a par with the current income beneficiary, which would be contrary to Illinois law. See *Bornstein v. First United*, 232 Ill. App. 3d 623, 629 (1992) ("Where there are multiple beneficiaries named in a trust, a trustee is under a duty to deal impartially with each of them.").

¶ 18     Tiffany also argues that the trial court erred in finding that Luther intended to have the Marital Trust invested conservatively. Tiffany asserts that there are no express provisions in the Living Trust requiring such an investment strategy and that, indeed, section 11.5, which allows investment in bonds, also allows for investments in common preferred stocks and joint ventures, which are not necessarily conservative investments. Therefore, Tiffany contends, because the trial court's grant of summary judgment was based on an erroneous interpretation of Luther's intent in creating the Marital Trust, this court should reverse the summary judgment order and grant summary judgment in her favor.

¶ 19     Under the Trust and Trustees Act, "[a] person establishing a trust may specify in the instrument the rights, powers, duties, limitations and immunities applicable to the trustee, beneficiary and others and those provisions where not otherwise contrary to law shall control, notwithstanding this Act." 760 ILCS 5/3 (West 2008). "Thus, the legislature intended that the settlor of a trust have the freedom to direct his bounty as he sees fit, even to the point of giving effect to a provision regarding the rights of beneficiaries that might depart from the standard provisions of the Act, unless 'otherwise contrary to law.' " *In re Estate of Feinberg*, 235 Ill. 2d 256, 267 (2009). The exercise of discretion by the trustee is not subject to interference by the court absent proof of fraud, abuse of discretion or bad faith. *Brown*

*Brothers Harriman Trust Co. v. Bennett*, 357 Ill. App. 3d 399, 410 (2005) (citing *In re Estate of McInerny*, 289 Ill. App. 3d 589, 600 (1997)). "Absent actions by the trustee that are 'outside the bounds of reasonable judgment,' a court cannot substitute its judgment for the trustee's judgment." *Brown Brothers,* 357 Ill. App. 3d at 410 (citing *In re Estate of McInerny*, 289 Ill. App. 3d at 600).

¶ 20    Here, the Living Trust created the Marital Trust, which came into existence at Luther's death. Four provisions of the Marital Trust are relevant in ascertaining the rights, powers, and duties that Luther granted to Audrey as trustee of the Marital Trust. Those provisions state, in relevant part:

> "Section 4.1 **Mandatory Payment of Income**. Beginning with my death, the trustee shall pay all the income to my wife."

> "Section 4.2 **Discretionary Payment of Principal**. Principal from the Marital Trust shall not be paid to my wife."

> "Section 4.4 **Distribution on Termination**. On the death of my wife, the trustee shall distribute the Marital Trust not required for payment of the Marital Trust death taxes to the trustee for the benefit of my daughter, subject to the Child's Separate Trust withholding provisions ***."

> "[T]he trustee shall have the following powers, to be exercised in a fiduciary capacity:

> * * *

> Section 11.5 **Investing.** To invest in bonds, common or preferred stocks, notes, options, common trust funds, mutual funds, shares of any investment company or trust, or other securities, life insurance, partnership interests, general or limited, limited liability company interests, joint ventures, real estate, or other property of any kind, regardless of diversification and regardless of whether the property would be considered a proper trust investment ***."

¶ 21    Sections 4.1 and 4.4 indicate that Luther intended for the Marital Trust to provide income to Audrey during her lifetime and for the remainder of the Marital Trust to go to Tiffany upon Audrey's death. Luther's intent to provide lifetime income to Audrey can also be discerned from the context of his estate planning scheme embodied in the Living Trust from which the Marital Trust was created. The Living Trust created not only the Marital Trust, but two other trusts, the GST Separate Trust and the Family Trust, expressly for Tiffany and to the exclusion of Audrey. The existence of those two trusts and the fact that the Marital Trust would only come into existence if Audrey survived Luther makes it clear, as the trial court found, that Luther "wanted income payments to go to Audrey without any discretionary payments of the corpus." Because the Marital Trust permits no invasion of the corpus by either party, the trial court correctly viewed Tiffany's right to the corpus upon termination of the Marital Trust, not as evidence of Luther's intention that the Marital Property primarily benefit Tiffany but, rather, "as guidance of where the money should go when the trust ceases to exist."

¶ 22    Next, section 11.5, which permits Audrey to invest in any property "*regardless of diversification and regardless of whether the property would be considered a proper trust*

*investment,*" makes clear that Luther intended for Audrey to generate unlimited income for herself from virtually any investment. (Emphasis added.) Nothing in the language of the Living Trust requires Audrey to invest in a manner that would ensure that Tiffany's remainder interest, after taking inflation into account, would be worth $2 million at the time the Marital Trust is terminated, upon Audrey's death. Therefore, the trial court did not err in finding that pursuant to the plain language of the Living Trust and Luther's intent in creating the Marital Trust, Audrey did not breach her fiduciary duties to Tiffany by investing solely in municipal bonds.

¶ 23                                 B. Fiduciary Duties and the Prudent Investor Rule

¶ 24       Tiffany next contends that even if the trial court did not err in interpreting Luther's intent in creating the Marital Trust, this court should reverse because Audrey breached her fiduciary duties of impartiality and prudence as well as the prudent investor rule. First, Tiffany asserts that Audrey breached her fiduciary duties of impartiality and prudence by knowingly engaging in an investment strategy that maximizes income while damaging the remainder of the beneficiary interest. Further, Tiffany argues that a trustee who is granted authority in a trust document to make investment decisions regardless of diversification is still required under the prudent investor rule to diversify her investments.

¶ 25       To establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 747 (2009). " '[A] trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degree of fidelity and utmost good faith.' " (Internal quotation marks omitted.) *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615 (2007) (quoting *In re Estate of Muppavarapu*, 359 Ill. App. 3d 925, 929 (2005), quoting *Giagnorio v. Emmett C. Torkelson Trust*, 292 Ill. App. 3d 318, 325 (1997)). A trustee has a duty to deal impartially with all beneficiaries and to protect their interests. *Bangert v. Northern Trust Co.*, 362 Ill. App. 3d 402, 407 (2005). A trustee also has a duty of loyalty, which flows not from the trust instrument but from the relationship of trustee and beneficiary, and the essence of this relationship is that the trustee is charged with equitable duties toward the beneficiary. *Fuller Family Holdings, LLC*, 371 Ill. App. 3d at 615.

¶ 26       Tiffany asserts that Audrey had a duty to treat all beneficiaries under the trust impartially, without any favor toward her own interest. See *Northern Trust Co. v. Heuer*, 202 Ill. App. 3d 1066, 1070 (1990) ("A trustee has a duty to deal impartially with all beneficiaries and to protect their interests."). In this case, Tiffany asserts, the trial court concluded that Audrey's income interest was superior to Tiffany's remainder interest and, therefore, found that Audrey could invest in any manner she wanted even if it was detrimental to plaintiff's future interest. Tiffany contends that this conclusion is not supported by the terms of the Living Trust, which does not give Audrey's interest as income beneficiary priority over her remainder interest, and further, that it is contrary to trust law, which imposes a duty on a trustee to treat all beneficiaries impartially. We disagree. The trial court made no finding that

-9-

Audrey's beneficiary interest was superior to Tiffany's beneficiary interest but instead, as discussed above, inferred from the language of the Living Trust that Luther intended for Audrey to generate income during her lifetime in any way she deemed appropriate, regardless of diversification. The court acknowledged that as a result of Audrey's current strategy of investing solely in municipal bonds, inflation may take a toll on the principal, but it found that the investment strategy Audrey adopted was consistent with Luther's intent in creating the Marital Trust. Therefore, we reject Tiffany's argument that Audrey breached her duty of impartiality.

¶ 27    Next, Tiffany asserts that the trial court's order granting summary judgment should be reversed because the court misapplied the law with respect to Audrey's fiduciary duty of prudence and the Illinois prudent investor rule.

¶ 28    The prudent investor rule provides in relevant part that a trustee "has a duty to pursue an investment strategy that considers both the reasonable production of income and safety of capital, consistent with the trustee's duty of impartiality and the purposes of the trust. Whether investments are underproductive or overproductive of income shall be judged by the portfolio as a whole and not as to any particular asset." 760 ILCS 5/5(a)(5) (West 2008). The rule states that "[n]o specific investment or course of action is, taken alone, prudent or imprudent" but, rather, "[t]he trustee's investment decisions and actions are to be judged in terms of the trustee's reasonable business judgment regarding the anticipated effect on the trust portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action. The prudent investor rule is a test of conduct and not of resulting performance." 760 ILCS 5/5(a)(2) (West 2008). The rule lists factors a trustee may take into consideration in making investment decisions including, "without limitation, the general economic conditions, the possible effect of inflation, the expected tax consequences of investment decisions or strategies, the role each investment or course of action plays within the overall portfolio, the expected total return (including both income yield and appreciation of capital), and the duty to incur only reasonable and appropriate costs. The trustee may but need not consider related trusts and the assets of beneficiaries when making investment decisions." 760 ILCS 5/5(a)(6) (West 2008).

¶ 29    A trustee is expected to exercise the same degree of care in managing a trust as persons of prudence and intelligence would exercise in their own affairs. *Faville v. Burns*, 2011 IL App (1st) 110335, ¶ 35 (citing *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 463 (2008). " 'The trustee must be mindful of the beneficiaries' interests, and the trustee cannot act inconsistently with the beneficiaries' interests, irrespective of the trustee's good or bad faith.' " *Faville*, 2011 IL App (1st) 110335, ¶ 35 (quoting *Laubner*, 386 Ill. App. 3d at 464). That said, a court will not interfere with a trustee's exercise of discretion given to him by the trust instrument so long as the trustee does not act in a wholly unreasonable and arbitrary manner. *Faville*, 2011 IL App (1st) 110335, ¶ 35 (citing *Laubner*, 386 Ill. App. 3d at 464).

¶ 30    Tiffany contends that Audrey has violated the prudent investor rule by engaging in an investment strategy that considers neither the reasonable production of income nor the safety of capital but, rather, seeks solely to maximize her income while decreasing the value of the principal. Tiffany rejects Audrey's argument that her investment strategy resulted in a healthy

income return given the recent turmoil in the equity market because that return only benefits Audrey and the prudent investor rule is intended to be "a test of conduct and not of resulting performance" of the trust. 760 ILCS 5/5(2) (West 2008). Further, Tiffany argues that trust language excusing diversification does not abrogate the trustee's duty to act prudently, which includes a duty to diversify, especially where the trustee is losing principal. Tiffany asserts that this is an issue of first impression in Illinois but that the weight of authority from other jurisdictions supports a finding that an investment strategy that includes only municipal bonds and therefore, does not protect against inflation is a violation of the prudent investor rule.

¶ 31    For support, Tiffany cites *In re Estate of Cooper*, 913 P.2d 393, 398-99 (Wash. Ct. App. 1996). In *Cooper*, the plaintiff, who was the testator's daughter and a remainder beneficiary of her mother's trust, filed an action against her father, who was both the surviving spouse and income beneficiary, seeking to remove him as the trustee of the trust and for an accounting. *Cooper*, 913 P.2d at 396. The trial court found that the father breached his duty to act as a prudent investor by maintaining an investment policy that maximized income to the detriment of trust corpus growth. *Cooper*, 913 P.2d at 397. The appellate court affirmed, holding as a matter of first impression that an investment strategy that weighed in favor of income over trust appreciation was a breach of the trustee's duty to act as a prudent investor. *Cooper*, 913 P.2d at 399.

¶ 32    Tiffany also relies on *Robertson v. Central Jersey Bank & Trust Co.*, 47 F.3d 1268 (3d Cir. 1995). In *Robertson*, a trust beneficiary brought suit against a trustee for breach of fiduciary duty in failing to diversify when the trustee kept 95% of trust assets invested in its own stock. The trustee argued that while the prudent investor rule implies a duty to diversify, the testator intended to abrogate that law by including a provision in the trust that gave the trustee broad discretionary power to retain assets in the trust without diversification. The Third Circuit rejected the trustee's broad argument and held that the trust clause does not "completely absolve[ ] [the trustee] from any duty to diversify" or "abrogate [the trustee's] general obligation to [act] with prudence." *Robertson*, 47 F.3d at 1275. The court then reversed the trial court's grant of summary judgment in favor of the trustee, finding that the issue of whether the trustee breached its fiduciary duty by retaining its own corporate stock as 95% of the trust corpus was a fact question. *Robertson*, 47 F.3d at 1279.

¶ 33    Similarly, in *First Alabama Bank of Huntsville, N.A. v. Spragins*, 475 So. 2d 512 (Ala. 1985), the Alabama Supreme Court held that the terms of a trust instrument directing the trustee to make new investments "as it may seem necessary or desirable, regardless of any lack of diversification, risk, or nonproductivity" did not lessen the duty imposed by the "prudent person" standard or prevent the fact finder from considering whether the trustee had breached his fiduciary duty in maintaining a large proportion of the trust's portfolio in the form of stock of the trustee bank's holding company. (Internal quotation marks omitted.) *Spragins*, 475 So. 2d at 515-16.

¶ 34    Tiffany asserts that *Cooper*, *Robertson*, and *Spragins* support her argument that Audrey's investment elections, which eschewed diversification and favored her income over appreciation, was a breach of her duty to act as a prudent investor and that a permissive nondiversification clause in a trust does not insulate a trustee from liability where she knows

that a failure to diversify will harm the beneficiary. However, all of these cases are distinguishable from the instant case and therefore do not support Tiffany's argument.

¶ 35    First, *Robertson* and *First Alabama Bank of Huntsville* are inapposite from the instant case because they involve allegations that the trustee invested a majority of the trust assets in the trustee's own stock while Audrey's investments in municipal bonds were not similarly self-serving. A case that presents facts similar to those in *Robertson* and *First Alabama Bank of Huntsville* may be grounds for finding that a trustee's duty of prudence trumps trust language that excuses diversification; however, those facts are not present here.

¶ 36    *Cooper* is also distinguishable from the instant case in one key respect. Here, the trust agreement expressly permitted Audrey to make investment elections "regardless of diversification" while the trust document in *Cooper* contained no such provision. The prudent investor rule provides that the provisions of the rule "may be expanded, restricted, eliminated, or otherwise altered by express provisions of the trust instrument." 760 ILCS 5/5(b) (West 2008). Luther expressly gave Audrey authority to invest in any property without regard to diversification and, as such, altered the requirements of the prudent investor rule. Contrary to Tiffany's assertion, this language is not merely "boilerplate" since it is the only provision in the Living Trust that delineates Audrey's investment authority. Therefore, we find that *Cooper* does not provide support for Tiffany's argument.

¶ 37    In her role as trustee, Audrey was required to be mindful of Tiffany's interests as the remainder beneficiary and was prohibited from acting inconsistently with those interests, regardless of whether she was acting in good faith or bad faith. *Faville*, 2011 IL App (1st) 110335, ¶ 35 (citing *Laubner*, 386 Ill. App. 3d at 464). However, a trustee's exercise of discretion will not be interfered with by a court so long as he or she does not act in a wholly unreasonable and arbitrary manner. *Faville*, 2011 IL App (1st) 110335, ¶ 35 (citing *Laubner*, 386 Ill. App. 3d at 464). Here, we find that the trial court did not err in finding that Tiffany failed to establish a cause of action under the prudent investor rule where there is no evidence that Audrey's decision to invest in municipal bonds was arbitrary or unreasonable. Therefore, we affirm the trial court's grant of summary judgment on Tiffany's allegations of breach of fiduciary duties.

¶ 38                    C. Punitive Damages and Unjust Enrichment

¶ 39    Lastly, Tiffany contends that the trial court erred in granting summary judgment as to her punitive damages and unjust enrichment claims. Because we find that the trial court did not err in granting summary judgment in favor of Audrey as to Tiffany's breach of fiduciary duty counts, we also affirm the trial court's grant of summary judgment in favor of Audrey as to the punitive damages and unjust enrichment counts.

¶ 40                              III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the circuit court's grant of summary judgment in favor of Audrey as to the four breach of fiduciary duty counts and the punitive damages and unjust enrichment counts of Tiffany's complaint.

¶ 42    Affirmed.