2024 IL App (1st) 230442-U

No. 1-23-0442

Order filed February 20, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| KENNY GAUTHIER, as mother and next friend of M.S., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | No. 2015 L 1766 |
| CHICAGO BOARD OF EDUCATION, | ) ) | The Honorable John Simon, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith concurred in the judgment.
Justice Pucinski dissented.

**ORDER**

¶ 1     *Held*: Plaintiff failed to demonstrate that the circuit court erred in granting summary judgment in defendant's favor where plaintiff did not provide a complete record on appeal. We affirm.

¶ 2     Plaintiff Kenny Gauthier, as mother and next friend of M.S., appeals from the circuit

court's order entering summary judgment in favor of defendant, the Chicago Board of Education,

on plaintiff's claim for willful and wanton misconduct. On appeal, plaintiff contends that a

genuine issue of material fact exists with respect to plaintiff's assertion that defendant breached its duty to keep students, including M.S., safe from known dangers. Plaintiff argues, among other things, that defendant improperly allowed plaintiff's assailant to remain in school despite defendant's knowledge that the assailant had a prior sexual encounter on school premises. Plaintiff also asserts that the Local Governmental & Governmental Employees Tort Immunity Act (Act) does not apply. See 745 ILCS 10/1-101 *et seq.* (West 2014). For the following reasons, we affirm the circuit court's judgment.

¶ 3                                    I. Background

¶ 4      On February 19, 2015, plaintiff filed a complaint alleging that defendant engaged in willful and wanton misconduct with respect to an incident that occurred on April 2, 2014, at Chicago Vocational Career Academy High School, which defendant owned and operated. According to the complaint, M.S. was an intellectually disabled student who attended the school. While at school, M.S. was touched in a sexual manner by another student, M.W. As a result, M.S. threw up on M.W. In addition, defendant had known that other students had accused M.W. of sexual abuse prior to this incident. Plaintiff further alleged that it was defendant's duty to act with reasonable care, to refrain from the reckless disregard of the students' safety, and to refrain from willful and wanton acts or omissions. Moreover, defendant breached its duty by subjecting M.S. to criminal sexual abuse by a student who defendant knew to be a danger to other students. In disregarding this duty, defendant acted willfully and wantonly, leading M.S. to sustain injuries.

¶ 5      Defendant's answer admitted that M.S. and another student were involved in an incident of sexual misconduct. Defendant also admitted that M.W. was previously issued a misconduct report and was suspended for inappropriate behavior. Defendant generally denied, however, that

the suspension followed prior allegations that M.W. sexually abused other students. Furthermore, defendant essentially denied that it possessed, or violated, a duty to protect other students due to knowledge that M.W. presented a danger.

¶ 6     Defendant's answer also raised affirmative defenses under the Act. 745 ILCS 10/2-201, 3-108 (West 2014). As for section 2-201, defendant claimed that as a local public entity, it was not liable for an injury resulting from an act or omission in determining policy or an exercise of discretion.  Furthermore, section 3-108 provided immunity for injuries resulting from a failure to supervise an activity.

¶ 7     Following discovery, defendant filed a motion for summary judgment, arguing that the Act immunized defendant's alleged misconduct under not only sections 2-201 and 3-108, but sections 4-102, 2-103 and 2-205 as well. See 745 ILCS 10/4-102, 2-103, 2-205 (West 2014). Defendant asserted that section 4-102 immunized defendant for failing to provide police protection service to prevent the commission of crimes. In addition, sections 2-103 and 2-205 immunized defendant for the failure to enforce any law or adopt any policy, and provided them with absolute immunity with respect to willful and wanton misconduct. Moreover, defendant argued that a party generally has no duty to prevent the criminal acts of another, and the "special relationship" exception did not apply here.

¶ 8     Several items were attached to defendant's motion, such as M.S.'s Individualized Education Plan (IEP Plan) and the transcripts of the depositions of M.S., his mother, Principal Douglas Maclin, Dean Lloyd Batts, and Assistant Principal Donna Harris. Only the IEP plan, however, is included in our record on appeal.

¶ 9     In response, plaintiff argued that defendant did not enjoy broad immunity under section 2-201. Additionally, section 3-108 did not apply because defendant's conduct was willful and

3

wanton, as defendant's knowledge of M.W.'s prior conduct created a duty to protect M.S., but defendant had disregarded M.S.'s safety. Plaintiff further argued that sections 2-103 and 2-205 did not apply because plaintiff was not alleging that defendant failed to enforce or adopt a policy, but instead, maintained that defendant had engaged in willful misconduct by allowing a student known to engage in oral sex at school to remain there. As to section 4-102, the case at hand involved the inability of school staff to provide supervision and protection, not the absence of police protection. Plaintiff argued that at a minimum, a genuine issue of material fact remained, precluding summary judgment.

¶ 10     The circuit court granted defendant's motion for summary judgment, "[f]or the reasons stated in open court." The report of proceedings, however, is not included in our record on appeal. See Ill. S. Ct. R. 321 (Oct. 1, 2021); Ill. S. Ct. R. 323 (eff. July 1, 2017).

¶ 11                                II. Analysis

¶ 12     On appeal, plaintiff asserts that the circuit court erred by entering summary judgment in defendant's favor, as defendant is not entitled to immunity under the statutes in question.

¶ 13     Summary judgment should be granted when the pleadings, depositions and admissions on file, together with the affidavits, if any, establish that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. 725 ILCS 5/2-1005(c) (West 2014). Conversely, a triable issue of fact precluding summary judgment exists where the material facts are disputed or where the material facts are undisputed, but reasonable persons might draw different inferences from those facts. *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 321 (2010). When reviewing an order granting summary judgment, we must determine whether, when viewed in the light most favorable to the nonmovant, the pleadings, depositions, admissions and affidavits on file reveal a genuine issue of material fact. *Brugger v. Joseph*

4

*Academy, Inc.,* 202 Ill. 2d 425, 446 (2002). We review the circuit court's judgment *de novo.*

*Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 14    Here, defendant's motion for summary judgment and plaintiff's response relied on facts addressed in multiple witnesses' depositions in order to string together a story as to what happened in this case. That being said, plaintiff has failed to include those deposition transcripts in the record on appeal.

¶ 15    It is the appellant's duty to provide on appeal a sufficiently complete record of the lower court proceedings to support her claims of error. *Midstate Siding & Window Co. v. Rogers,* 204 Ill. 2d 314, 319 (2003). Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) generally requires that the record on appeal include the entire common law record, including every document filed in the case. Absent such a record, we must presume that the circuit court's order conformed with the law and was supported by an adequate factual basis. *Midstate Siding & Window Co.*, 204 Ill. 2d at 319. Any doubts arising from an incomplete record will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); *Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 17.

¶ 16    The parties' briefs rely on facts that were apparently addressed in the deposition transcripts, which included M.S.'s firsthand account of what happened on the day in question. Without those transcripts, we are unable to make an evenhanded determination of what the evidence shows happened between M.S. and M.W., where it happened and how it happened, or what defendant and school employees did or did not do in the time leading up to the students' encounter. The dissent acknowledges that such information is missing from our record on appeal, but concludes that the missing information creates a genuine issue of material fact. The dissent's approach, however, would improperly resolve doubts resulting from the incomplete record against the appellee, rather than the appellant. See *Foutch*, 99 Ill. 2d at 392. This we cannot do.

Similarly, we cannot find that the circuit court erred in determining that defendant was immune from liability based on discovery materials that we do not have before us. See 725 ILCS 5/2-1005(c) (West 2014). Because plaintiff has failed to provide us with the deposition transcripts, she cannot meet her burden demonstrating that the court erred. Absent a complete record, we must presume that the relevant materials supported the circuit court's finding that no genuine issue of material of fact exists.

¶ 17     For the foregoing reasons, we affirm the circuit court's judgment.

¶ 18     Affirmed.

¶ 19     JUSTICE PUCINSKI, dissenting:

¶ 20     With respect, I dissent.

¶ 21     Gauthier filed a one count complaint against the Chicago Board of Education )"Board") claiming that her son, MS, was sexually assaulted by another boy in the school, MW, after the Board already knew that MW has previously been involved in a sexual encounter with a different boy at the same school, and that the Board should have, therefore, removed MW from the school permanently.  Gauthier's complaint alleged that the assault on her son was the result of willful and wanton derogation of the Board's duty to protect her son from student sexual predators, and that her son, MS, had been harmed as a result.

¶ 22     The Board responded first with a 2-615 Motion to Dismiss, based on immunity, which was denied, and then with a 2-619 Motion to Dismiss, again based on immunity, which was also denied.  It then filed a Motion for Summary Judgment,  also based on immunity, which was granted.

¶ 23     It is interesting to me that on multiple occasions  this long case the Board  was uncooperative in discovery enough that the court had to begin writing orders for it to comply.  It

6

is also interesting to me that on multiple occasions in this long case the Board often referred to the sexual assault of MS by MW as euphemistically as possible: i.e., "sexual touching," and "incident." This dilutes the essence of this case: that a boy was sexually assaulted by another boy while attending a school operated by the Board.

¶ 24    The majority would affirm the trial court's order of summary judgment in favor of the defendant, Chicago Board of Education ("Board") mainly because the plaintiff did not file a complete record. That is true. Gauthier did not file any depositions or any report of proceedings.

¶ 25    However, we often take cases on review where the record is incomplete, but we can figure out what is being appealed and why from what we are given. See: Carter v. Carter, 2012 IL App (1st) 110855, ¶ 13 "proceeding to review merits of the case where appellant's violations of Supreme Court Rule 341(h) do not hinder our review of the case since we have the benefit of the record before us, as well as [appellee's] proper citations to the record on appeal.".

¶ 26    I note in passing that a review of the Certification by the Clerk of the Circuit Court indicates that the Clerk did not certify any Report of Proceedings and did not certify any Exhibits (See Certification filed, case 1-23-0442, 5/9/23). The majority also takes issue with Gauthier's brief, which I admit is not nearly as robust as it could be.

¶ 27    On the record that was filed it is uncontested that MS was sexually assaulted by MW. MW admitted it. (CLR 245.)

¶ 28    The Board knew that MW had previously been engaged in sexual activity with a different boy. "MW was in a sexual act in a bathroom stall with another male student when security noticed." (CLR 246.) The Board said it found that sexual activity to be consensual. Whether it was consensual would be a question of fact, because both students, MW and the other student involved, were in special needs education and their developmental ages could have

7

tilted the balance in favor of finding non-consent by the other child. The full details of that earlier incident were in MW's file at the Board but are not included in the record of this appeal because it involved another student. The sexual activity is, however, referenced, more than once in this record. I find it interesting that the principal of the CVHS recommended expelling MW from that CVHS for that early sexual activity, but the Board overruled that recommendation, leaving MW free to prey on other students, specifically MS, another young male student at CVHS.

¶ 29    The Common Law Record includes 878 pages of which 553 pages is material filed in the trial court obtained in discovery from the Board. This material includes multiple Individual Education Plans, Eligibility Determinations, and Psychological Evaluations for both MW and MS.

¶ 30    These plans are highly detailed and are written in a combination of normal, readable, English and education jargon, but the gist is clear.

¶ 31    I note that one problem with the Board's documents, however, is that the dates are sometimes unclear, confused or conflated. For example, CLR 228 indicates MW graduated from grade school in June, 2014 and went on to CVHS but the incident report (CLR 145, 157, 165) and the misconduct report (CLR 176) for this sexual assault make it clear that it took place at CVHS on April 2, 2014 so that makes no sense.

¶ 32    It abundantly clear from all of those reports put together, that the Board knew that MW had been involved in sexual activity at CVHS with a different boy, was a special education student, identified as "Learning Disabled" (CLR 213) with poor social judgment (CLR 382,) who had been found in at least one report to be upset and angry(CLR 291), who "regretted the two incidents of sexual nature" (6-11-2014 CLR 420,) and about whom his own mother said, in

a June 4, 2014 report, she was : "unsure if he understands the difference between right and wrong….impulsive….having the maturity of an 11 year old." (CLR 420)

¶ 33    To be sure, MW's life was not easy.  He was displaced from his family home in New Orleans after Hurricane Katrina and moved to Chicago at a very young age. At least one of the Board reports reference his mother as unresponsive to school requests for meetings (CLR 220). MW graduated from elementary school when he aged out while in 7th grade.  He was placed at CVHS in Grade 9.  He skipped 8th grade entirely.

¶ 34    But MS's life was not easy either. The Board materials also leave no doubt that it knew that  MS, the victim,  was also a special needs child, in the mild autism range (CLR 465 )and in special education classes.  The reports indicate that MS did not engage in inappropriate behavior but appeared to be shy and that he mimicked (report 6-20-12 CLR 629) other students.  The reports indicate that when MW engaged in  the sexual assault on MS, that MS objected and vomited.

¶ 35    Under the circumstances here, where the  Board knew of the previous incident with another boy, it should have made every, and I mean every, effort to monitor MW.

¶ 36    This it did not do.  I recognize that the in loco parentis immunity provided by the School Code immunized the Board from ordinary negligence.  However, on the record before us, I believe there is at least a genuine issue of fact as to whether the Board was guilty of willful and wanton negligence, which would remove it from the protection of in loco parentis immunity.  In turn, I believe summary judgment was improper.

¶ 37    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the

nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008).

¶ 38    We review de novo a trial court's decision granting summary judgment. Hartford Fire Insurance Co. v. Everest Indemnity Insurance Co., 369 Ill. App. 3d 757, 761 (2006).

¶ 39   "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment [Citation.]"  Robidoux v Oliphant, 201 Ill 2d 324, 335 (2002).  "[S]ummary judgment is not appropriate: (1) if there is a dispute as to a material fact; (2) if reasonable persons could draw divergent inferences from the undisputed material facts; or (3) if reasonable persons could differ on the weight to be given the relevant factors of a legal standard." (internal quotation marks omitted.) Seymour v. Collins, 2015 IL 118432, ¶ 42.

¶ 40    While there are many issues that are unrebutted, there still remain some serious issues of fact.  First, was the first sexual encounter MW had with another boy truly consensual? Second, was the Board's decision not to expel MW from CVHS after that first sexual encounter the only choice it had when faced with the duty to protect all the other boys at CVHS? Third, Where, exactly, did MW's sexual assault on MS occur?  There are different locations documented in the Board's own reports, so it is essential to determine if the sexual assault actually took place on school property and, if so, at what time?  Fourth, some of the Board's documents indicate a decision at the school level to lock the bathroom doors, and some of the reports indicate that this sexual assault took place in a bathroom.  If that is the case, then did the school lock the bathroom doors or not?  Fifth, does the Board have a policy concerning sexual assault in its schools?  If so,

what is it?  Is so, then how and to what extent, was that policy implemented, or not, after MW's first sexual encounter on school property and was that a policy decision or was it disregard for the safety of other students?

¶ 41     The Board argues that it is immune from liability for the sexual assault on MS, relying on the Tort Immunity Act. It wants this court to find that its choices in supervising or not supervising MW enjoy the protections of tort immunity because its acts were discretionary under 745 ILCS 10/4-102, 2-201, 3-10, 4-102, 2-103,and 2-205, arguing that the Act provided immunity for failing to provide "police protection service to prevent the commission of crimes," "failure to enforce any law." "failure to adopt any policy," that a party generally has no duty to "prevent the criminal acts of another," and absolute immunity with respect to willful and wanton misconduct.  Finally, the Board argued that the "special relationship" exception does not apply here.  My respected colleagues have agreed.  I do not.

¶ 42     First, Section 24-24 of the School Code 105 ILCS 5/24-24 is critically important here.  It provides in relevant part:

"Maintenance of discipline.  Subject to the limitations of all policies established or adopted under Section 14-805, teachers, other certificated education employees and any other person, whether or not a certificated employee, providing a related service for or with respect to a student shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities.  In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils  This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians."

11

¶ 43    The School Code clearly establishes that no matter what else is going on, the Board and its employees involved in school programs are in loco parentis, acting as the parents would, for the safety and supervision of students.  See Henrich v. Libertyville High School, 186 Ill. 2s 381, 388-89 (1988) ("Section 24-24 of the School Code confers on teachers in loco parentis status in all matters relating to the supervision of students in school activities.") "[T]his statute grants educators the immunity that parents enjoy [citation] and which school district vicariously enjoy [Citation.]" Id. At 388.

¶ 44    Whether a cause of action has been stated and whether and to what extent immunities are available will depend upon the particular facts and circumstances of each case.  Ib.  ¶17 (citing Calloway v. Kinkelarr, 168 Ill 2d 312, 330 (1995)).

¶ 45    The in loco parentis form of immunity applies to ordinary negligence but not to willful and wanton misconduct.  Henrich v Libertyville High School, 186 Ill 2d 381, 388-389 (1998) Id. ("This court has interpreted section 24-24 to immunize ordinary neglect but not to immunize willful and wanton misconduct. [Citations.]  Our supreme court "has narrowed parental immunity to cover only ordinary negligence arising from conduct that is inherent to the parent-child relationship; i.e., conduct that confers parental discretion in discipline, supervision and care of the child.  Absent such conduct a child may recover from a parent for negligence." Id.  (citing Cates v. Cates, 156 Ill 2d 76, 104-105 (1993). In turn "the educator immunity provided by section 24-24 of the School Code is accordingly narrowed,"  Id,  "Thus, based on the School Code, educators are not liable to their students for ordinary negligent conduct but are liable for willful and wanton conduct." (Emphasis added.) Trotter v. School Dist. 218, 315 Ill. App 3d 1, 8 (2000).

¶ 46    "Illinois does not treat willful and wanton misconduct as a separate tort."  Davis v. Village of Maywood, 2023 IL App (1st) 211373 ¶16.  "Instead, willful and wanton misconduct is regarded as an aggravated form negligence and as essentially a hybrid between conduct that is considered negligent and conduct that is considered intentionally tortious."  Id., (quoting Sparks v. Starks, 367 Ill App. 3d 834, 837 (2006)).  "A successful claim based on a theory of willful and wanton is a claim in which the plaintiff plead and proved the basic elements of a negligence claim – including that the defendant owned a duty to the plaintiff, the defendant breached the duty and the breach was the proximate cause of the plaintiff's injury [citations]  Id. -– and the plaintiff also alleged and established whether a conscious disregard for the plaintiff's welfare or a deliberate intention to harm.  Id.( citing Brooks v. McLean County Unit District No. 5,  2014 IL App 4th 130503 ¶ 20. "Whether conduct amounts to willful and wanton negligence is generally a question of fact for the jury to determine.  Oelze v. Score Sports Venture, LLC, 401 Ill. App. 3d 110, 123 (citing Canning v. Barton, 264 Ill. App. 3d 952, 955 (1994)).

¶ 47    To show willful and wanton negligence in the supervision of school children, the "plaintiff must show that the teacher or school was aware or should have know that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm. " Jackson v. Chicago Board of Education, 192, Ill. App. 3d 1093 1100, (1989) (affirming grant of summary judgment in favor of school board where the record "discloses no evidence of any knowledge by the school or its employees as to prior behavioral problems by the student that allegedly injure plaintiff).

¶ 48    A jury may find willful and wanton conduct where, as here, the record suggests that school personnel failed to supervise a student despite having notice the student posed a specific threat.  Significantly, in facts resembling this case, our supreme court held that a complaint

alleging a school board's failure to supervise a known "sexually aggressive child" alleged willful and wanton conduct. Doe ex rel. Ortega-Piron v. Chicago Bd. Of Educ., 213 ILL 2d 19 (2004). In Doe, the complaint alleged that the plaintiff's ward, a special education student "at a school for maladjusted boys was sexually assaulted by another male student passenger on the bus taking them to school." Id. At 22. The usual bus attendant was not present on the day in question. Id. The "assailant had a deviant sexual history, had been declared a sexually aggressive child *** and was under a 'Protective Plan' requiring that he never be left unsupervised among other children." Id. The trial court granted defendants motion to dismiss on the basis of immunity under section 4-102 of the Local Governmental and Governmental Employees Tort Immunity Act and for failure to plead facts stating a claim of willful and wanton conduct. Id at 22-23. Our appellate court reversed, finding section 4-102 of the Act inapplicable and also finding that the complaint alleged willful and wanton conduct. 339 Ill. App 3d 848, 856 (2003).

Our supreme court affirmed. First our supreme court found immunity under section 4-102 of the Act inapplicable because "the Board was not providing a police protection service by furnishing a bus attendant." (Doe, 213 Ill. 2d 29 at 27.) Further, our supreme court agreed that the complaint adequately pleaded willful and wanton conduct, finding that:

"[T]he Board's knowledge of the special needs of the plaintiff's ward and dangerous propensities of the assailant were adequately pleaded. *** The complaint alleged the disabled status of the plaintiff's ward, the fact of the assailant's SACY [sexually aggressive child and youth ward] status, and the requirement of his protective plan. These averments of fact are sufficient to present jury questions as to the knowledge of the Board and the foreseeability of harm to the plaintiff's ward and, thus, the issue of willful and wanton conduct. Id. At 29.

¶ 49    Other decisions similarly indicate that willful and wanton conduct is supported by allegations that school personnel knew of but ignored a specific threat.  For example, our Second District found that a student pleaded willful and wanton misconduct based on allegations that the school board acted in utter indifference to or conscious disregard for the welfare of students that came into contact with a particular teacher, given the board's knowledge of that teacher's prior instances of sexual misconduct.  Doe v. Dimovski, 336 Ill. App. 3d 292 (2003).

¶ 50    In another case, our Fifth District reversed entry of judgment for a school district notwithstanding the jury verdict, were at trial there was "ample proof that the risk of harm" from a particular student "was brought to the attention of [a guidance counselor] and that supervision necessary to maintain discipline aimed at avoiding a confrontation between these pupils was not provided."  Gammon v. Edwardsville School District, 82 Ill. App 3d 586, 589 (1980) (noting that guidance counselor "was well aware of the offending student's prior conduct and there was evidence that school officials knew of prior fighting on her part.").  Under different circumstances, the Fifth District also reversed summary judgment in a school district's favor with respect to  a student's claim of willful and wanton conduct based on the plaintiff student's eye injury during an industrial arts class, where plaintiff alleged that a teacher observed him hammering metal and knew or should have know that the metal could splinter, yet the teacher failed to direct him to wear goggles.  Hadley v. Witt Unit School District 66, 123 Ill. App 3d 19 (1984).

¶ 51    In this case, the record shows at least a triable issue of fact as to whether the Boad breached its duty to plaintiff in a way that amounted to willful and wanton misconduct.  The record shows at least some evidence from which a jury could find that the Board had Specific knowledge of the threat of sexual abuse posed by MW to other students such as plaintiff yet

15

failed to adequately supervise MW to reduce that threat. That is, a jury should have been given an opportunity to decide whether the Board's conduct amounted to a "conscious disregard for the plaintiff's welfare or a deliberate intention to harm. Brooks v. McLean County Unit Dist. No. 5., 2014 IL App (4th) 130503 ¶20.

¶ 52    What would be more willful and wanton than not protecting special needs children from another special needs child who had already violated school rules with sexual behavior, whether consensual or not?

¶ 53    Even if we believed for a moment that the first child was mature enough to consent to sexual activity, that clearly demonstrates that the school authorities were on notice that MW was drawn to sexual activity. In an environment where other students were particularly vulnerable it was required to take every possible step to prevent a second occurrence.

¶ 54    It did not do that. It chose not to do that. It could have expelled MW. It could have transferred him immediately to a "safe school" on a permanent basis. Indeed, when he was involved in this assault, he was transferred to Camelot Safe School but only for 9 days (CLR 420, teacher interview 6-11-14)

¶ 55    I would reverse the circuit court's order of Summary Judgment for the  Board  and let a jury decide the facts and appropriate remedy.