2023 IL App (1st) 211373

SECOND DIVISION
December 29, 2023

No. 1-21-1373

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ANDREW DAVIS and JAIRAME DAVIS, as Independent Administrator on Behalf of the Estate of Lee Anthony Davis, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | 2018-L-64020 |
| v. | ) ) | Honorable |
| THE VILLAGE OF MAYWOOD, | ) ) | Cheryl D. Ingram, Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    We determined in an earlier appeal that the tort claims the plaintiffs electronically filed on the last day of the limitations period, but which the clerk of the court rejected four days later, were not time barred. *Davis v. Village of Maywood*, 2020 IL App (1st) 191011. On remand, the plaintiffs filed a first amended complaint. Andrew Davis and the estate of his deceased father, Lee Anthony Davis, sued the Village of Maywood. They alleged that law enforcement's woeful response to Andrew's 911 call about domestic violence that they were experiencing was willful and wanton in light of the 10 statutory duties imposed upon officers responding to intrafamily abuse. The police officers' actions and inactions resulted in injuries to Andrew and the death of Lee Anthony. Section 304(a) of the Illinois Domestic Violence Act of 1986 (Act) contains seven of those duties, stating:

"Whenever a law enforcement officer has reason to believe that a person has been abused,

neglected, or exploited by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation, including [for instance, making an arrest, providing information about obtaining an order of protection, or providing transportation for the victim to a medical facility or shelter or court]." 750 ILCS 60/304(a) (West 2016).

The three other similar duties set out in section 304(b) of the Act are relevant "[w]henever a law enforcement officer does not exercise arrest powers or otherwise initiate criminal proceedings." 750 ILCS 60/304(b) (West 2016). According to the complaint, Maywood police officers did not provide any of the enumerated forms of intervention when they responded to Andrew's call about his abusive brother, Gale Jackson. Instead, they questioned Andrew and his father in front of Gale, then transported and left Gale at a hospital. When Gale returned to the residence hours later, he attacked both of his accusers and fatally injured Lee Anthony. The circuit court granted the municipality's motion to dismiss the complaint, not only finding that the plaintiffs' allegations were factually deficient, but also denying leave to amend. The court found, as a matter of law, that the officers had acted "in good faith" and that the plaintiffs' allegations were fatally defective under the immunity provision that the municipality is afforded by section 305 of the Act. See 750 ILCS 60/305 (West 2016). Section 305 provides,

"Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, unless the act is a result of willful or wanton misconduct." 750 ILCS 60/305 (West 2016).

Thus, the issue presented in this second appeal is whether it was error to grant the municipality's

motion to dismiss on the basis that the plaintiffs did not and could not allege willful and wanton misconduct.

¶ 2    The first amended complaint alleges the following. Gale's assault upon Andrew and Lee Anthony in their Maywood home on July 13, 2017, was the culmination of two days of violent behavior. On July 11, while in Maywood, Gale struck a friend over the head with a glass bottle and was arrested for battery. After being released from custody on a personal recognizance bond, Gale returned to the Davis residence, and, over the course of the next day, July 12, he was "aggressive and violent" towards Andrew, Lee Anthony, and others in the household. "At the culmination of this [hours long] rampage," Gale "swung a crutch recklessly at Andrew." "[I]n the early morning hours of July 13th," when Andrew dialed 911 and reported that "he thought that [Gale] was going to kill someone in the home," Maywood police officers and an ambulance responded to the scene. The officers then interviewed the three men together, which was "against proper [police] protocol and training." Fearful of infuriating Gale, Andrew initially denied making the 911 call. But when the officers were about to leave, he admitted to being the caller. Andrew and Lee Anthony also told the police that Gale was "dangerous," and one of the officers "commented that he knew [Gale] and that he knew [him] to be dangerous." These "circumstances *** were a clear indication that both Andrew Davis and Lee Anthony Davis were domestic violence victims in need of protection."

¶ 3    The police did not arrest Gale, "though they had probable cause to do so, but instead [they] merely transported him to the hospital and left him there." Although there was some indication in their original complaint that "[Gale] was taken to the hospital for a mental health evaluation," in the pleading at issue, there was no indication as to why Gale was transported to a medical facility.

¶ 4 "At no time during this incident did any Maywood police officer ask Andrew Davis or Lee Anthony Davis whether they wanted to sign a criminal complaint against [Gale] Jackson." The subsequent allegations plead other duties of active intervention that are required by section 304(a) and (b) of the Act (750 ILCS 60/304(a), (b) (West 2016)). The officers did not (1) ask whether either man wanted an emergency order of protection, (2) explain to them how to obtain such an order, (3) transport or offer to transport them to obtain an emergency order, (4) accompany them while they retrieved necessary personal belongings and possessions from the residence, (5) take either man to a place of safety, (6) offer medical treatment, (7) offer to preserve evidence of the abuse, or (8) summarize the relief that was available to them pursuant to the Act.

¶ 5 When Gale was released from the hospital "later that night" (July 13), he went back to the house. He found Andrew asleep and choked him into unconsciousness. As Andrew came to, a "confrontation" ensued in which Lee Anthony intervened. Gale then pushed Lee Anthony down a set of stairs, causing him to sustain a head injury and lose consciousness. Lee Anthony was transported to a hospital and declared dead. Less than 12 hours had elapsed since Andrew asked the 911 operator to send help to the Davis residence because Gale "was going to kill someone in the home." Gale was arrested and charged with aggravated domestic battery and murder. In their appellate brief, the plaintiffs state that Gale has since been indicted for first degree murder (a felony), that Gale was twice found fit to stand trial, and that the criminal case against him is still pending.

¶ 6 Counts I and II are claims brought by Lee Anthony's estate for damages under the Wrongful Death Act (740 ILCS 180/1 (West 2018)) and the Survival Act (755 ILCS 5/27-6 (West 2018)) due to the "willful and wanton actions of one or more Maywood police officers" when they

"failed to do their duty to prevent a crime *** as required by the [Domestic Violence] Act." Count III is Andrew's claim for damages based on the officers "willfully and wantonly fail[ing] to do their duty to prevent [a crime] *** as required by the Act."

¶ 7    In a section 2-619.1 combined motion to dismiss (735 ILCS 5/2-619.1 (West 2018)), Maywood argued that the plaintiffs were relying on legal conclusions, including that the officers "willfully and wantonly failed to do their duty [to persons protected by the Act]." In the alternative, Maywood argued that it was immunized from liability by various sections of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2018) or by section 6-103 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/6-103(d) (West 2018)), primarily because the plaintiffs had not alleged willful and wanton misconduct.

¶ 8    During oral arguments, the circuit court found that the allegations of willful and wanton conduct were factually deficient. Removing Gale from the home "to a place more equipped to deal with someone who may be dangerous" was a "reasonable manner" of making Andrew and Lee Anthony "safe" and was not "the type of action or inaction that would shock the consciousness [*(sic)*] or [was] in an utter disregard for the well-being of the victims." Furthermore, the officers were not subject to an open-ended duty to protect Andrew and Lee Anthony from Gale. Also, although Maywood was not immunized by either statute that the municipality cited, it was immunized by the similarly worded statute regarding willful and wanton conduct that we quoted in the first paragraph of this order, section 305 of the Act. See 750 ILCS 60/305 (West 2016). The plaintiffs requested leave to replead, as these were the first allegations that the circuit court had reviewed. However, the court entered a dismissal with prejudice, concluding that no facts could

be alleged to show willful and wanton misconduct.

¶ 9    On appeal, the plaintiffs argue that both of the circuit court's findings (factual deficiency and statutory immunity) are incorrect. They contend that the Maywood officers failed to perform any of the duties mandated by section 304(a), particularly, they failed to make an arrest, to offer information about how to obtain an order of protection, and to make a referral to a social service agency (750 ILCS 60/304(a)(1), (4), (5) (West 2016)) and willfully and wantonly failed to perform these duties. Plaintiffs allege that, as a foreseeable consequence of officers' misconduct, Gale engaged in further domestic abuse in the Davis home, for which Maywood is liable. Maywood responds that the plaintiffs failed to allege actionable misconduct and the dismissal with prejudice was proper.

¶ 10    Section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)) provides that arguments with respect to pleadings pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2018)) may be filed together in a single motion. While a motion to dismiss pursuant to section 2-615 of the Code disputes the legal sufficiency of the complaint, a motion pursuant to section 2-619 admits the legal sufficiency of the complaint but asserts an affirmative defense that defeats the claim. *Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503, ¶ 14.

¶ 11    Relevant to the section 2-615 portion of Maywood's motion is the principle that, in this "fact-pleading jurisdiction, a pleading must be both legally and factually sufficient. It must assert a legally recognized cause of action and it must plead facts which bring the particular case within that cause of action." (Internal quotation marks omitted.) *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003) (citing 3 Richard A. Michael, Illinois Practice, Civil Procedure Before

Trial § 23.4 (1989)). While the plaintiff is not required to set out his or her ultimate evidence, he or she must allege sufficient facts to state a claim, not simply conclusions. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006); *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 489 (1994) ("not only are allegations of law or conclusions not required, they are improper"). Accordingly, when reviewing a decision to grant a motion pursuant to section 2-615, we consider whether the allegations, construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Marshall*, 222 Ill. 2d at 429.

¶ 12    The municipality's other argument for dismissal, immunity, is an affirmative matter properly raised in a motion to dismiss under section 2-619(a)(9). See 735 ILCS 5/2-619(a)(9) (West 2018); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). After addressing the plaintiffs' arguments about the factual sufficiency of their allegations, we will consider any additional legal principles that are necessary to resolve their section 2-619 arguments.

¶ 13    Whether the dismissal was pursuant to section 2-615 or 2-619, we accept as true all well-pled facts and all reasonable inferences that may be drawn from those facts, while construing the allegations in the complaint in the light most favorable to the plaintiff. *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶ 18. A circuit court may dismiss a complaint pursuant to section 2-615 or 2-619 with no opportunity to replead only if it is clearly apparent that no set of facts can be proven that will entitle plaintiff to recovery. *Illinois Graphics Co.*, 159 Ill. 2d at 488 (regarding section 2-615); *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003) (regarding section 2-619).

¶ 14    Our review of a dismissal under either section 2-615 or 2-619 is *de novo*. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). The *de novo* standard is also applicable

when addressing a question of statutory interpretation. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009).

¶ 15 Section 305 of the Act states:

"Limited law enforcement liability. Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, unless the act is a result of willful or wanton misconduct." 750 ILCS 60/305 (West 2016).

¶ 16 In other words, pursuant to section 305, the municipality is liable for the plaintiffs' damages only if the law enforcement officers engaged in willful and wanton conduct that proximately caused the plaintiffs' damages. 750 ILCS 60/305 (West 2016). Illinois does not treat willful and wanton misconduct as a separate and independent tort. *Brooks*, 2014 IL App (4th) 130503, ¶ 20 (citing *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274 (1994)). Instead, willful and wanton misconduct is regarded as an aggravated form negligence and as essentially a hybrid between conduct that is considered negligent and conduct that is considered intentionally tortious. *Sparks v. Starks*, 367 Ill. App. 3d 834, 837 (2006). A successful claim based on a theory of willful and wantonness is a claim in which the plaintiff pleads and proves the basic elements of a negligence claim—including that the defendant owed a duty to the plaintiff, the defendant breached the duty, and the breach was the proximate cause of the plaintiff's injury (*Brooks*, 2014 IL App (4th) 130503, ¶ 20 (citing *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010)))—and the plaintiff also alleges and establishes either a conscious disregard for the plaintiff's welfare or a deliberate intention to harm. *Brooks*, 2014 IL App (4th) 130503, ¶ 20 (citing

*Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004)); *Sneed v. Howell*, 306 Ill. App. 3d 1149, 1159 (1999) (willful and wanton conduct consists of a course of action that shows an utter indifference to or conscious disregard for the safety of others or an actual or deliberate intent to cause harm); *Murray v. Chicago Youth Center*, 224 Ill. 2d 213 (2007) (reviewing supreme court precedent defining willful and wanton conduct).

¶ 17    More succinctly, to state a claim for damages under the Act, the plaintiff must allege that (1) he or she is a person in need of protection under the Act, (2) the statutory law enforcement duties owed to him or her were breached, (3) the duties were breached by the willful and wanton acts or omissions of law enforcement officers, and (4) the misconduct proximately caused the plaintiff's injuries. *Moore v. Green*, 219 Ill. 2d 470, 484 (2006) (citing *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 324 (1995)). Whether a cause of action has been stated and whether and to what extent immunities are available will depend upon the particular facts and circumstances of each case. *Calloway*, 168 Ill. 2d at 330.

¶ 18    When interpreting a statute, our role is to determine and give effect to the intent of the legislature. *Moore*, 219 Ill. 2d at 479; *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996). Our inquiry begins with the statute's language, the best indicator of legislative intent. *Moore*, 219 Ill. 2d at 479; *Barnett*, 171 Ill. 2d at 388. Statutory terms are to be read with their plain, ordinary, and popularly understood meaning. *Moore*, 219 Ill. 2d at 479. We are to evaluate a statute as a whole, with each provision being construed in connection with every other provision, and not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Barnett*, 171 Ill. 2d at 388-89.

¶ 19    The Act, now more than 35 years old, is "a comprehensive statutory scheme for reform of

the legal system's historically inadequate response to domestic violence." *Moore*, 219 Ill. 2d at 489. The "sad statistics of potentially preventable death in domestic arguments are legion, but suffice it to say that it was long ago recognized that careful intervention by law enforcement and the judiciary has been recognized to save many lives." *Fenton v. City of Chicago*, 2013 IL App (1st) 111596, ¶ 16. The General Assembly intended for the Act "to be 'liberally construed and applied to promote its underlying purposes.' " *Calloway*, 168 Ill. 2d at 320 (quoting 750 ILCS 60/102 (West 1992)). Those remedial purposes in relevant part are to

"(1) Recognize domestic violence as a serious crime against the individual and society which produces family disharmony in thousands of Illinois families, promotes a pattern of escalating violence which frequently culminates in intra-family homicide, and creates an emotional atmosphere that is not conducive to healthy childhood development;

\*\*\*

(3) Recognize that the legal system has ineffectively dealt with family violence in the past, allowing abusers to escape effective prosecution or financial liability, and has not adequately acknowledged the criminal nature of domestic violence; that, although many laws have changed, in practice there is still widespread failure to appropriately protect and assist victims;

\*\*\*

(5) Clarify the responsibilities and support the efforts of law enforcement officers to provide immediate, effective assistance and protection for victims of domestic violence, \*\*\*; and

(6) Expand the civil and criminal remedies for victims of domestic violence; including,

when necessary, the remedies which effect physical separation of the parties to prevent further abuse." 750 ILCS 60/102(1), (3), (5), (6) (West 2016).

¶ 20 Accordingly, the Act "streamlines the procedures that victims of domestic violence must use to obtain orders of protection *** and pushes petitions for orders of protection to the top of the trial court dockets." *Moore*, 219 Ill. 2d at 481. Subsequent sections of the Act "shift[ ] focus from helping victims to obtain orders of protection to instructing law enforcement agencies and officers to enforce them." *Moore*, 219 Ill. 2d at 481-82. "The Act provides that law enforcement officers may arrest, without warrants, persons who violate orders of protection." *Moore*, 219 Ill. 2d at 482. Also, the specific sections of the Act that are relevant here, section 304(a) and (b), require law enforcement officers to actively assist victims of abuse, as follows:

"(a) Whenever a law enforcement officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation, including:

(1) Arresting the abusing, neglecting and exploiting party, where appropriate;

(2) If there is probable cause to believe that particular weapons were used to commit the incident of abuse, subject to constitutional limitations, seizing and taking inventory of the weapons;

(3) Accompanying the victim of abuse, neglect, or exploitation to his or her place of residence for a reasonable period of time to remove necessary personal belongings and possessions;

(4) Offering the victim of abuse, neglect, or exploitation immediate and adequate

information (written in a language appropriate for the victim or in Braille or communicated in appropriate sign language), which shall include a summary of the procedures and relief available to victims of abuse under subsection (c) of Section 217 and the officer's name and badge number;

(5) Providing the victim with one referral to an accessible service agency;

(6) Advising the victim of abuse about seeking medical attention and preserving evidence (specifically including photographs of injury or damage and damaged clothing or other property); and

(7) Providing or arranging accessible transportation for the victim of abuse (and, at the victim's request, any minors or dependents in the victim's care) to a medical facility for treatment of injuries or to a nearby place of shelter or safety; or, after the close of court business hours, providing or arranging for transportation for the victim (and, at the victim's request, any minors or dependents in the victim's care) to the nearest available circuit judge or associate judge so the victim may file a petition for an emergency order of protection under subsection (c) of Section 217. When a victim of abuse chooses to leave the scene of the offense, it shall be presumed that it is in the best interests of any minors or dependents in the victim's care to remain with the victim or a person designated by the victim, rather than to remain with the abusing party.

(b) Whenever a law enforcement officer does not exercise arrest powers or otherwise initiate criminal proceedings, the officer shall:

(1) Make a police report of the investigation of any bona fide allegation of an incident of abuse, neglect, or exploitation and the disposition of the investigation, in

accordance with subsection (a) of Section 303;

    (2) Inform the victim of abuse[,] neglect, or exploitation of the victim's right to request that a criminal proceeding be initiated where appropriate, including specific times and places for meeting with the State's Attorney's office, a warrant officer, or other official in accordance with local procedure; and

    (3) Advise the victim of the importance of seeking medical attention and preserving evidence (specifically including photographs of injury or damage and damaged clothing or other property)." 750 ILCS 60/304 (West 2016).

¶ 21 Notably, both 304(a) and 304(b) state that law enforcement "shall" take certain actions. When the word "shall" is used by the legislature, it ordinarily indicates a mandatory obligation. See *In re Marriage of Takata*, 304 Ill. App. 3d 85, 95 (1999) ("Under the rules for statutory construction, the word 'shall' ordinarily connotes a mandatory obligation, unless the context of the statute indicates otherwise."); *Hoffman Estates Professional Firefighters Ass'n v. Village of Hoffman Estates*, 305 Ill. App. 3d 242, 253 (1999) ("Legislative use of the word 'shall' is generally considered to express a mandatory reading.").

¶ 22 The duties expressed in section 304(a) and (b), combined with other sections that "expressly contemplate[ ] the expansion of civil and criminal remedies for abuse victims [citation], subject to the limitation of liability expressed in section 305," demonstrate "the General Assembly's intent to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse." *Calloway*, 168 Ill. 2d at 324.

¶ 23 Section 305 of the Act immunizes law enforcement for acts or omissions that result from their " 'good faith' " efforts in rendering emergency assistance or otherwise enforcing the Act.

*Calloway*, 168 Ill. 2d at 322 (quoting 750 ILCS 60/305 (West 1992)). However, section 305 subjects law enforcement officers to liability when they have engaged in willful and wanton misconduct in breach of a statutory duty to a victim of domestic violence. *Moore*, 219 Ill. 2d at 489. In other words, the legislature intended "that officers are not to be held civilly liable for mere negligence in the good-faith performance of their duties under the Act." *Calloway*, 168 Ill. 2d at 322.

> "[T]his partial immunity of law enforcement agents is a direct expression of legislative intent to reconcile the strongly worded purposes of the Act—primarily the protection of and assistance to victims of abuse—with the recognition that officers performing their legal duties should not be held civilly liable when their efforts to enforce the Act fall short, *unless* the conduct in question can be viewed as willful or wanton." (Emphasis in original.) *Calloway*, 168 Ill. 2d at 322.

¶ 24    Treating the well pled facts as true and drawing all reasonable inferences from those facts, we find that the plaintiffs satisfied the first element of their claims with allegations indicating that Andrew and Lee Anthony were persons in need of protection within the meaning of the Act, as they were abused by a family or household member. The persons protected by the Act include any person abused by a family or household member. 750 ILCS 60/201(a) (West 2016). The definitions section of the Act indicates, " 'Domestic violence' means abuse"; " 'Abuse' means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation"; and " 'Physical abuse' " means, among other things, "knowing or reckless use of physical force, confinement or restraint" or "knowing or reckless conduct which creates an immediate risk of physical harm." 750 ILCS 60/103(1), (3), (14) (West 2016). The pleading includes the allegations

that Gale recently struck a friend over the head with a glass bottle, was arrested and held until he posted a bond, and "engaged in an hours-long pattern of aggressive and violent behavior toward the occupants of the house." These allegations encompass both Andrew and Lee Anthony. Although they lack specificity as to what Gale was doing during this "hours-long" state of violence, they allege that Gale was volatile.

¶ 25    The circuit court emphasized the allegation that Gale had "recklessly" swung a crutch at Andrew and reasoned that recklessness "negates any intentional or abusive behavior towards Andrew." The circuit court's conclusion was erroneous because, regardless of whether Gale was deliberate or reckless as he swung the crutch, the Act defines "reckless use of physical force" as a form of domestic violence. 750 ILCS 60/103(14)(i) (West 2016). The word "recklessly" did not make the allegation superfluous, and this allegation should have been part of the circuit court's consideration of the adequacy of the pleading.

¶ 26    The allegations that Gale struck the friend, continued to be "aggressive and violent" with members of the household, and then "recklessly" swung at Andrew, even if the later conduct was only careless, could give rise to a reasonable inference that Gale was being physically abusive and endangering the people in his vicinity, including Lee Anthony. There are also the allegations that Andrew, Lee Anthony, and the police already knew Gale to be a "dangerous" person and that Andrew asked the 911 operator to send help because Gale's conduct had escalated to the point that he "was going to kill someone in the home." These allegations, particularly the distressed phone call, encompass both Andrew and Lee Anthony. The circuit court remarked that, apparently, none of the occupants needed medical attention from the ambulance personnel that had arrived with the police officers. This is another instance when the circuit court's analysis was misdirected. The

circuit court was commenting on an irrelevant fact because the Act does not require physical injury before law enforcement officers are required to actively assist domestic violence victims. "[H]arassment" or "interference with personal liberty" is considered abuse. 750 ILCS 60/103(1) (West 2016). The pleading indicates that Andrew and Lee Anthony had endured two days of Gale's disturbing volatility, aggression, violence, and recklessness in their home. Gale's alleged conduct is reasonably characterized as harassment. Furthermore, the plaintiffs alleged, "Harassment, intimidation, and threatening abuse of the type referenced [in the pleading] interfered with the personal liberty of [Andrew and Lee Anthony] and thus constituted domestic violence under [the Act]." Although the factual allegations about Gale's conduct when he "engaged in an hours-long pattern of aggressive and violent behavior toward the occupants of the house" could be more specific (and likely improved by repleading), construing them in the light most favorable to the nonmoving party, the pleading indicates that Andrew and Lee Anthony were victims of domestic violence.

¶ 27 With respect to the second element, again, although the pleading lacks factual detail, it does suggest that statutory law enforcement duties owed to Andrew and Lee Anthony were breached by the Maywood officers' acts or omissions. The plaintiffs should have been given an opportunity to amend their claims because it could not be determined from the pleading (the first complaint to be reviewed) that there was no set of facts upon which the plaintiffs could recover.

¶ 28 The question of whether a defendant's actions amount to willful and wanton misconduct is usually a question of fact to be determined by a jury, but the preliminary question of whether allegations of willful and wanton misconduct are sufficient to state a cause of action is a question of law to be determined by a court. *Torres*, 2020 IL App (3d) 190248, ¶ 23; *Doe v. Calumet City*,

161 Ill. 2d 374, 390 (1994) (whether conduct is willful and wanton is ultimately a jury question, but "a court must first decide as a matter of law whether a plaintiff has alleged sufficient facts such that a jury question concerning the willful and wanton nature of defendant's conduct is created").

¶ 29    "Whether conduct is willful and wanton depends on the circumstances of each case." *Harris v. Thompson*, 2012 IL 112525, ¶ 41; see *Barr v. Cunningham*, 2017 IL 120751, ¶ 15 (the totality of the evidence are circumstances to consider in determining whether a defendant's conduct is willful and wanton).

¶ 30    In *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248 (2003), the court observed three categories of willful and wanton actions. At one extreme are alleged circumstances that are "so benign as to clearly be, as a matter of law, below the theoretical minimum for willful and wanton conduct." *Suwanski*, 342 Ill. App. 3d at 257. At the other extreme are circumstances "so egregious that one could say, as a matter of law, that the officer acted willfully and wantonly." *Suwanski*, 342 Ill. App. 3d at 257. The third scenario are those "circumstances where the question of willful and wanton conduct is the subject of reasonable argument." *Suwanski*, 342 Ill. App. 3d at 257. "[W]here reasonable minds might draw different inferences from the same undisputed facts, it is the role of the jury to decide whether [the officer's] exercise of discretion crossed a line and [became willful and wanton]." *Agwomoh v. Village of Dolton*, 2022 IL App (1st) 210892, ¶ 72. It is only the third category of cases that cannot be decided as a matter of law and must be turned over to a jury. *Suwanski*, 342 Ill. App. at 257.

¶ 31    Here, we cannot say that the allegations and reasonable inferences drawn in the plaintiffs' favor were such that the circuit court could have determined as a matter of law that the officers were "acting in good faith in rendering emergency assistance" (750 ILCS 60/305 (West 2016))

and that their conduct was so benign that it could never be considered willful and wanton misconduct. The circuit court erred, as it lacked sufficient facts to form its conclusions of law as well as its determination that there was no set of facts upon which the plaintiffs could recover.

¶ 32     The plaintiffs cite an illustrative case, *Calloway*, 168 Ill. 2d 312, in which the supreme court first recognized a cause of action for damages by persons protected by the Act whose injuries are allegedly caused by the willful and wanton misconduct of police officers in performing or failing to perform the affirmative obligations that are imposed upon them by the Act. There, the plaintiff alleged that she told the sheriff of Effingham County about threats her husband was making in violation of an order of protection that had been entered because of domestic abuse, yet the sheriff only "briefly observed the house and then drove off, without further investigation." *Calloway*, 168 Ill. 2d 315-16. Within hours of this inaction, the husband abducted the victim from work at gunpoint and forced her to drive them in his vehicle. *Calloway*, 168 Ill. 2d 316. Only after the reported abduction was she able to escape when Illinois troopers blocked the road. *Calloway*, 168 Ill. 2d at 317. The supreme court affirmed the appellate court's reinstatement of her claims of willful and wanton misconduct, as the sheriff "did nothing to enforce the order of protection or to intervene after being informed of Calloway's continuing abuse." *Calloway*, 168 Ill. 2d at 326. Thus, *Calloway*, decided nearly 30 years ago, instructs that awareness of abuse triggers the statutory duties. *Calloway*, 168 Ill. 2d at 323-24. And, in *Calloway*, our supreme court recognized that the failure to meet statutory duties can amount to actionable willful and wanton misconduct. *Calloway*, 168 Ill. App. 3d at 324 (noting that other jurisdictions had recognized causes of action arising out of violations of their domestic violence laws, and that Illinois, in order to "give effect to the legislature's purposes and intent in enacting the Domestic Violence Act" was recognizing a

right of action for civil damages). The plaintiffs also cite *Fenton*, 2013 IL App (1st) 111596, in which Chicago police officers were called to a violent domestic argument but took minimal action in derogation of their duties under the Act. After police were called back to the residence within an hour, they removed an "angry, drunken" 22-year-old man and made the outlandish request that he wait outside "in zero-degree weather in the middle of the night" until his girlfriend could pick him up. *Fenton*, 2013 IL App (1st) 111596, ¶¶ 1, 5-6. A few minutes later, he broke into the house and murdered his mother's boyfriend. *Fenton*, 2013 IL App (1st) 111596, ¶ 7. A jury found the officers to have been willful and wanton in failing to discharge their duties under the Act. *Fenton*, 2013 IL App (1st) 111596, ¶ 1. Law enforcement's alleged lack of response in *Sneed*, 306 Ill. App. 3d at 1152, was equally egregious. In that case, it was alleged that the City of Mount Vernon's police took no action when informed that an ex-husband was repeatedly violating an order of protection and that this allowed him to abduct and fatally injure his ex-wife. *Sneed*, 306 Ill. App. 3d at 1152. When reviewing the sufficiency of the plaintiff's allegations of willful and wanton conduct, the appellate court emphasized that the Act puts an affirmative duty on the police to respond to and investigate complaints. *Sneed*, 306 Ill. App. 3d at 1159.

¶ 33    Here it is alleged that the Maywood officers similarly failed in their duty under section 304(a) to "immediately use all reasonable means to prevent further abuse, neglect, or exploitation." 750 ILCS 60/304(a) (West 2016); *Calloway*, 168 Ill. 2d at 323-24 (section 304 establishes immediate duties to act when law enforcement has reason to know of intrafamily abuse) and that they left an alleged abuser at liberty to reenter the victims' home later that same day.

¶ 34    The circuit court narrowly focused on the statute's first enumerated duty and whether the officers were obligated to arrest Gale. The statute does not necessarily impose a duty of arrest

because section 304(a)(1)'s phrase "[a]rresting the abusing, neglecting and exploiting party" is followed by the modifying phrase "where appropriate" (750 ILCS 60/304(a)(1) (West 2016)), which we read to mean that the officers were still able to use their training, experience, and discretion to determine whether it was appropriate to effect an arrest. Furthermore, the statute expressly contemplates instances when no arrest is made. Immediately after subparagraph 304(a)'s illustrative list of seven "reasonable means to prevent further abuse, neglect, or exploitation," subparagraph 304(b) provides, "Whenever a law enforcement officer *does not exercise arrest powers* or otherwise initiate criminal proceedings, the officer shall ***." (Emphasis added.) 750 ILCS 60/304(a), (b) (West 2016). Thus, the Act did not mandate an arrest solely because the police were made aware that domestic violence was occurring.

¶ 35     Although their pleading did not specify any arrestable offense or cite any section of the Illinois criminal code, the plaintiffs argue that it would have been "[p]articularly appropriate" to arrest Gale. Based upon the allegations in their complaint, the several offenses that Gale could have been arrested for are assault, disorderly conduct, and reckless conduct. The Criminal Code of 2012 provides, "A person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a) (West 2016). "Domestic battery" consists of a person, "knowingly without legal justification by any means," "(1) [causing] bodily harm to any family or household member" or "(2) [making] physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a) (West 2016). Assault and domestic battery are both misdemeanor crimes. 720 ILCS 5/12-1(b), 12-3.2(b) (West 2016). A person commits "disorderly conduct," another misdemeanor offense, when he or she does any act "in such unreasonable

manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1), (b) (West 2016). In *Davis*, the supreme court stated that the main purpose of the offense of disorderly conduct is to "guard against 'an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification.' " *People v. Davis*, 82 Ill. 2d 534, 538 (1980) (quoting Ill. Ann. Stat., ch. 38, ¶ 26-1, Committee Comments, at 149 (Smith-Hurd 1977)). The misdemeanor of "reckless conduct" results when a person "by any means lawful or unlawful, recklessly performs an act or acts" that "(1) cause bodily harm to or endanger the safety of another person; or (2) cause great bodily harm or permanent disability or disfigurement to another person." 720 ILCS 5/12-5(a), (b) (West 2016). The offense does not require actual bodily injury, as long as the defendant "endanger[ed] the safety of another person." 720 ILCS 5/12-5(a)(1) (West 2016). Gale's swing at Andrew fits within each of these definitions.

¶ 36     Here, the responding officers had probable cause to arrest Gale. Probable cause is sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime. *People v. Jones*, 215 Ill. 2d 261, 277 (2005). Andrew told the 911 operator that he thought that Gale "was going to kill someone in the home," from which it can be reasonably inferred that, among other things, Andrew told the 911 operator about Gale's reckless swing of the crutch. In other words, it could reasonably be inferred that an arrest should have been made to prevent the abuse that was sure to follow and did follow the officers' brief intervention. Granted, "the fact that somebody made the call to 911 does not automatically mean that he is the victim of abuse." *Fenton*, 2013 IL App (1st) 111596, ¶ 22. However, the responding officers here were (or reasonably should have been) aware of the fact of Gale's arrest two days prior by members of their own police force for striking a friend over the head with a glass bottle. Additionally, one of the responding officers

had some familiarity with Gale because, when speaking with the victims, the officer stated that he knew that Gale was "dangerous."

¶ 37    Furthermore, the officers' decision to interview the alleged abuser and victims together, rather than individually, factually pled their failure to uphold one of the Act's stated purposes of treating domestic violence as a "serious crime." See 750 ILCS 60/102(1) (West 2016) (the underlying purposes include to "[r]ecognize domestic violence as a serious crime against the individual and society which produces family disharmony in thousands of Illinois families, [and] promotes a pattern of escalating violence which frequently culminates in intra-family homicide"). The plaintiffs contend that the officers wantonly exacerbated the abusive situation by making Andrew admit to having called the police and that what the officers did was "not only against all proper police protocol, but also against simple common sense and [the Act's purposes]." From this, it could also be reasonably inferred that the group questioning exposed Andrew and Lee Anthony to Gale's subsequent retaliatory, escalating violence.

¶ 38    Although the pleading does not disclose the men's ages, it can be reasonably inferred that Lee Anthony was the most vulnerable and in need of effective police assistance and protection from a younger, abusive household member. Lee Anthony died shortly after Gale was able to leave the hospital unimpeded by law enforcement action, return to the house without being subject to an order of protection, and then batter both of his accusers. The plaintiffs contend that an arrest would have likely resulted in Gale being detained for some period of time because he had just been released from custody pursuant to a personal recognizance bond. Hospitals, on the other hand, generally have no authority to detain patients. Gale was able to leave the hospital whenever he chose. Arresting Gale, instead of merely leaving him in the hands of hospital personnel without

knowing the outcome of his medical evaluation, would have prevented the predictably tragic events that occurred when Gale was able to return to the residence under his own devices, without sufficient time for his anger to have cooled. Furthermore, arresting someone and obtaining medical care for them are not mutually exclusive choices.

¶ 39 Accordingly, the circuit court should have permitted an amendment so that the plaintiffs could provide more detailed allegations of what was disclosed during the 911 call and what was said during the group interview, as the statements might have reasonably lead to Gale's arrest.

¶ 40 Even without further details about what was disclosed to the 911 operator or the responding officers, the existing allegations, accepted as true, indicate that the officers shirked statutory duties owed to Andrew and Lee Anthony. We reiterate our conclusion that Andrew and Lee Anthony were protected persons under the Act. The plaintiffs alleged that the officers did not offer to accompany Andrew and Lee Anthony while they retrieved necessary personal belongings and possessions from the residence (in breach of section 304(a)(3)); provide information about how to obtain an emergency order of order, or offer transportation to where they could file for an emergency order (in breach of section 304(a)(4) and 304(a)(7)); take either man to a nearby safe place (in breach of section 304(a)(7)); or advise either about seeking medical attention and preserving evidence of abuse (in breach of section 304(a)(6)). Based on these allegations, we find that the plaintiffs adequately alleged the second element of a claim under the Act by alleging breach of at least one of the enumerated duties. Helping Andrew and Lee Anthony to either temporarily leave the residence or obtain an order of protection could well have prevented Gale's aggravated domestic abuse and murder after he left the hospital unimpeded by law enforcement.

¶ 41 In order to satisfy the third element, the facts needed to indicate that the actions and

inactions of Maywood law enforcement could be construed as not merely negligent but as utter indifference or conscious disregard for Andrew and/or Lee Anthony's welfare. See *Moore*, 219 Ill. 2d at 484 (stating four elements of an action for willful and wanton misconduct under the Act); 750 ILCS 60/305 (West 2016); *Ziarko*,161 Ill. 2d at 275-76 (under common law, willful and wanton misconduct may be only degrees more than ordinary negligence or only degrees less than intentional wrongdoing, depending upon the facts of the case).

¶ 42     Although there are numerous allegations that the Maywood officers owed and breached statutory duties (which we accept as true on a motion with respect to the pleading), we do not reach any conclusions as to whether the officers' conduct amounted to willful and wanton misconduct. "Whether a person is guilty of wilful and wanton conduct is a question of fact for the jury and should rarely be ruled upon as a matter of law." *Glover v. City of Chicago*, 106 Ill. App. 3d 1066, 1075 (1982); *Doe*, 161 Ill. 2d at 390 (whether conduct is willful and wanton is ultimately a jury question); *Torres*, 2020 IL App (3d) 190248, ¶ 23.

¶ 43     Despite deeming the complaint to be factually deficient, the circuit court also found that a hospital was "a place more equipped [than jail] to deal with someone who may be dangerous," which meant that "the officers acted in good faith in rendering emergency assistance," rather than acting willfully and wantonly. These conclusions were not based on facts or reasonable inferences. The first amended complaint disclosed no facts indicating why the officers decided to take Gale to a hospital. The circuit court opined about the officers' intentions but had no foundation for its opinion. The circuit court also had no factual grounds for determining that whatever hospital Gale was taken to was better equipped than Maywood's jail to deal with someone who might be dangerous or was suffering from mental or emotional deterioration. The record does not support

any comparison of the two facilities, and there was no reason to conclude that the officers had to choose between either obtaining medical care for Gale or detaining him for criminal activity. As we pointed out above, medical care and an arrest are not mutually exclusive choices. The circuit court then extrapolated from its erroneous factual findings in order to reach a conclusion that is usually made by a jury: that "the officers acted in good faith in rendering emergency assistance," rather than acting willfully and wantonly. This was not a decision to be made at the initial pleading stage.

¶ 44    To meet the fourth element, the plaintiffs needed to factually plead that Maywood's misconduct proximately caused injuries to the Davis family. See *Moore*, 219 Ill. 2d at 484 (stating four elements of an action for willful and wanton misconduct under the Act). We do not reach this element. The circuit court never reached this issue and we observe, that like the question of whether conduct is willful and wanton, whether the officers' conduct proximately caused injuries to the Davis family is generally a question that should be reserved for the finder of fact. *Freeman for Estate of Freeman v. City of Chicago*, 2017 IL App (1st) 153644, ¶ 37; *Winston v City of Chicago*, 2019 IL App (1st) 181419, ¶ 24.

¶ 45    Finally, we conclude that the circuit court further erred by denying the plaintiffs an opportunity to amend. We reverse the dismissal of the first amended complaint with prejudice and remand to the circuit court to allow the plaintiffs to replead. See *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992); *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1053 (1998).

¶ 46    Reversed and remanded with directions.

*Davis v. Village of Maywood*, 2023 IL App (1st) 211373

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-64020; the Hon. Cheryl D. Ingram, Judge, presiding. |
| **Attorneys for Appellant:** | Richard Dvorak and Adrian Bleifuss Prados, of Dvorak Law Offices, LLC, of Clarendon Hills, for appellants. |
| **Attorneys for Appellee:** | Howard C. Jablecki and Allen Wall, of Klein, Thorpe and Jenkins, Ltd., of Chicago, for appellee. |